## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| SARA KASONGO, | |
| Plaintiff, | No. 19-cv-02605 |
| v. | Judge John F. Kness |
| AMERICAN GENERAL LIFE INSURANCE COMPANY, a/k/a AMERICAN INTERNATIONAL GROUP, or AIG, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

This case presents a modern example of an old truism: the law sometimes "limit[s] the power of courts to redress even substantial harms." *Doermer v. Callen*, 847 F.3d 522, 530 (7th Cir. 2017). Plaintiff Sara Kasongo was the sole payee of an annuity policy to be paid by American General Life Insurance Company ("American General"). Over the course of four years, American General mailed several checks to Kasongo consistent with the terms of the annuity policy. But because Kasongo's own father allegedly forged Kasongo's signature and cashed her checks for his own benefit, Kasongo never personally obtained possession of the funds. After discovering this perfidy, Kasongo sued her father in an Illinois court. Kasongo also brought this separate action against American General in another Illinois court and alleged that, because she was never "paid" the funds she was owed, American General breached

the contractual terms of the annuity policy. Dkt. 1, Notice of Removal, Exh. 1, Compl.; Dkt. 11 at 3, n.3.

American General promptly removed the case to this Court under the statute that confers federal jurisdiction over actions in diversity. American General then moved to dismiss for failure to state a claim. Dkt. 10, Mot. to Dismiss at 1. That motion is now before the Court for decision.

Kasongo's breach of contract action, although replete with equitable concerns, is not well-founded under applicable Illinois law. Illinois authorities—statutory and decisional—make clear that where, as here, a third-party forger steals an insurance check that was properly addressed and mailed, the intended beneficiary typically cannot recover damages from the insurer. Because of this clear authority, Kasongo's breach of contract action fails to state a claim upon which relief can be granted. This complaint must therefore be dismissed.

## I.   BACKGROUND

Kasongo has, unfortunately, suffered significant hardship in her life. When Kasongo was a child, her mother died in a hospital accident. *See* Dkt. 20, Pl.'s Resp. Br. at 5; *Kasongo v. United States*, 523 F. Supp. 2d 759 (N.D. Ill. 2007). As part of the medical malpractice settlement that followed, Kasongo was awarded money damages in the form of an annuity policy issued by American General (the "Annuity"). Dkt. 20 at 4-5.

Under the terms of the Annuity, Kasongo was to begin receiving payments on June 30, 2014. Compl., Exh. A. As required, American General issued the first check,

payable to Kasongo, on that date. Compl. ¶ 7. Over the next four years, American General mailed six additional checks to Kasongo under the terms of the Annuity. *Id*. All seven of these checks were delivered to Kasongo's address, but Kasongo personally endorsed only the seventh, which was issued on December 31, 2018. *Id*. ¶¶ 7-8. Kasongo's father intercepted the first six checks, which totaled $171,391.66. Kasongo's father then endorsed the checks himself without Kasongo's knowledge (that is, he forged her signature), and deposited the funds into his own bank account. *Id*. ¶ 8.

Kasongo alleges that she did not learn of her father's fraud until February 2019. *Id*. ¶ 9. Upon discovering the forgeries, she filed a police report and contacted American General. *Id*. Kasongo asserts that American General initially promised to compensate her for the forged checks but later repudiated that promise. *Id*. ¶ 10. Kasongo then filed this lawsuit and alleged that American General breached the Annuity by failing to pay her the funds due under the policy. American General now moves to dismiss the entirety of Kasongo's complaint for failure to state a claim. Dkt. 10 at 1.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted). The

Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Iqbal*, 556 U.S. at 678-79.

## III.  ANALYSIS

In this case, which American General removed under 28 U.S.C. §§ 1332 and 1441, Kasongo asserts a single-count breach of contract claim. To establish breach of contract under Illinois law, Kasongo must allege (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d

759, 764 (7th Cir. 2010) (citing *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004)).

Kasongo alleges that American General breached the Annuity merely by failing "to pay [her] the monies owed to her under the Annuity." Compl. ¶ 11. Kasongo acknowledges that American General mailed checks to the correct address and the correct payee. *Id*. ¶¶ 7-8, Exh. B. She argues, however, that payment was not satisfied because she never "physically receive[d] the funds." Dkt. 20 at 2. Given this, the question is whether American General satisfied its obligation under the Annuity by issuing and mailing the checks to Kasongo at the correct address, or whether American General's obligation to pay Kasongo remains unsatisfied because she never took possession of the funds.

## A. Standing

At the outset, the Court must address a question of justiciability based on American General's suggestion that Kasongo might lack standing. Dkt. 11 at 5, n.4. American General intimates that it is "unclear" whether Kasongo "even has standing to pursue a breach of contract claim against American General" because she is not a named party to the Annuity (privity runs between the United States Department of Justice and American General). *Id*. This suggestion fails: Illinois law establishes that Kasongo, an intended third-party beneficiary of the Annuity, has standing to sue for breach of contract. *See Kaplan v. Shure Bros.*, 266 F.3d 598, 602-03 (7th Cir. 2001); *Carlson v. Rehab. Inst. of Chicago*, 50 N.E.3d 1250, 1256 (Ill. App. Ct. 2016). Satisfied that this dispute is justiciable federally, the Court turns to the merits of American

General's motion to dismiss.

### B.     Breach of Contract

#### 1.     *Contractual Language*

This motion presents the question whether Kasongo has, as a matter of law, pleaded a viable breach of contract claim where there is no dispute that American General remitted the required payments to the correct payee at the correct address, even though the checks were ultimately enforced by someone other than the named payee. In considering this question, the place to start, of course, is with the text of the Annuity contract. That provision states only that American General "will *pay* income payments as described in the Payment Schedule" and that "payments will be *paid* to the Payee starting on the Annuity Date." Compl., Exh. A at 1, 4 (emphasis added). "Pay" and "paid" are not defined in the Annuity, and there is no provision that specifies any details regarding the required method or manner of payment. Kasongo does not challenge the method of payment in any event (there is no tort-based or similar count included in the Complaint), so the Court does not consider the irrelevancy of whether sending paper checks through the mail was appropriate.

Although the Annuity does not elaborate on what "pay income payments" means, this does not necessarily imply the existence of an ambiguity that must be presented to a jury as a question of fact. *See Harmon v. Gordon*, 712 F.3d 1044, 1050 (7th Cir. 2013) (applying Illinois law). Before turning to the controlling Illinois authorities, the Court doubts that Kasongo has pleaded a viable breach of contract

claim based solely on the plain language of the Annuity because, as explained below, American General fulfilled its contractual duty.

It is undisputed that American General issued at least $171,391.66 in checks addressed to Kasongo and mailed to her residence. Without any language in the Annuity requiring American General to adopt a particular method of payment or manner of delivery of the physical checks, the Court finds that American General did what it promised to do. Kasongo did not receive the funds, to be sure, but that fact, without more, does not mean that American General failed to meet its obligations. Contract law is intended to "give effect to the intention of the parties as expressed in the agreement," *Am. Trucking & Transp. Ins. Co. v. Allied Tube & Conduit Corp.*, 491 Fed. Appx. 756, 758 (7th Cir. 2012) (nonprecedential disposition) (quoting *Nicor, Inc. v. Associated Elec. & Gas Ins. Servs.*, 860 N.E.2d 280, 285 (Ill. App. Ct. 2006)), and courts typically discern intent from the "ordinary meaning" of words used in contracts. *See, e.g., Robbins v. Lynch*, 836 F.2d 330, 332 (7th Cir. 1988). Based on the language of the Complaint and its attachments, which are considered part of the Complaint, Fed. R. Civ. P. 10(c), the Court finds that the Annuity does not reflect any agreement that American General would be on the financial hook until the promised funds were verified to be in Kasongo's possession.

To be sure, Kasongo contends that "under the plain language of the written contract, the risk of loss of the funds while in transit to her physical possession falls squarely on American General." Dkt. 20 at 6. Nothing in the Annuity, however, says—explicitly or implicitly—that American General bears such risk. Nor does

Kasongo provide any support for her bare assertion that risk of loss in transit should, as a default rule, fall on American General. In the alternative, Kasongo argues that any ambiguity about the risk of loss should be construed against American General as the drafter of the agreement, *id.*, but this argument also fails because "[a] court will neither add language or matters to a contract about which the instrument itself is silent, nor add words or terms to an agreement to change the plain meaning of the parties as expressed in the agreement." *Sheehy v. Sheehy*, 702 N.E.2d 200, 204 (Ill. App. Ct. 1998).

For these reasons, the Court holds that Kasongo has failed to plead a viable breach of contract based on the plain language of the Annuity.

### 2. *Uniform Commercial Code*

Illinois law precludes Kasongo's claim for an additional reason: American General discharged its obligations under the Uniform Commercial Code.[1] Article 3 of the Illinois Uniform Commercial Code governs negotiable instruments like checks. 810 ILCS 5/3-101, *et seq.* In two recent cases that also involved third-party forgeries of insurance checks, the Illinois Appellate Court relied on the UCC to hold that plaintiffs could not recover money from insurance company defendants where third-party bad actors stole the funds by forging the plaintiffs' signatures on insurance checks. *See Parkway Bank & Tr. Co. v. State Farm Fire & Cas. Co.*, 990 N.E.2d 1202, 1203 (Ill. App. Ct. 2013); *Affiliated Health Grp., Ltd. v. Devon Bank*, 58 N.E.3d 772,

---

[1] American General first raised its UCC arguments in its reply brief. Dkt. 22. The Court, acting *sua sponte*, granted Kasongo leave to respond to these arguments, which she did via a surresponse. Dkt. 40.

774 (Ill. App. Ct. 2016).

In *Parkway Bank*, the defendant insurer, State Farm, issued two checks to pay on a claim for fire damage to an apartment building. 990 N.E.2d at 1204-05. The checks were made out to three co-payees: the owners of the apartment building, a construction company hired to make repairs, and mortgagee Parkway Bank. The construction company forged the endorsement of the building owners and Parkway Bank and took sole possession of all the funds. *Id.* at 1205. Upon discovering the forgery, Parkway Bank demanded that State Farm reissue the checks, but State Farm refused to pay the claim a second time. State Farm argued that Parkway Bank failed to receive the funds because of the tortious conduct of a third party, for which State Farm should not be held liable. *Id.*

The Illinois Appellate Court upheld the lower court's dismissal of the claim and held that, under Section 3-310, Parkway Bank could not recover from State Farm for the loss of the funds. *Id.* at 1206. Under Section 3-310, when "an uncertified check is taken for an obligation" of the drawer (State Farm), the underlying obligation is "suspended" until the check is either (1) paid or (2) dishonored. 810 ILCS 5/3-310(b)(1). If the check is paid, then the contractual obligation is discharged; if the check is dishonored, then the contractual obligation is breached. 990 N.E.2d at 1206. But if the check has neither been paid nor dishonored, the contractual obligation remains "suspended." *Id.*

The *Parkway Bank* court concluded that because the checks had not been properly endorsed by all co-payees, they could not be considered "paid" for purposes

9

of Section 3-310. *Id*. At the same time, the check had not yet been dishonored. The obligation was thus suspended—that is to say, the underlying obligation was neither discharged nor breached. *Id*. And in the absence of a breach, State Farm could not be liable to Parkway Bank for failure to pay the underlying policy. *Id*.

In *Affiliated Health*, two employees stole health insurance payment checks made payable to the medical practices where they worked. 58 N.E.3d at 775. The employees then created sham entities with names similar to the medical practices and deposited the checks into bank accounts in the names of those sham entities. *Id*. After discovering the fraud, the medical practices sued the insurers that issued the stolen checks and argued that, because of the employees' forgery, the insurance companies had never actually "paid" the medical practices. *Id*.

The Illinois Appellate Court held that, because the insurers properly issued and delivered the checks to the medical practices' offices, and because a bank subsequently accepted those checks, the insurers' obligation was *discharged*—not suspended—under Section 3-310.[2] 58 N.E.3d at 778. In support, the court relied on

---

[2] In her surresponse, Kasongo suggests that *Affiliated Health* was wrongly decided. Dkt. 40 at 1. But without a clear holding from the Supreme Court of Illinois that *Affiliated Health* is bad law, this Court lacks the authority to disregard it. *See In re Emerald Casino, Inc.*, 867 F.3d 743, 765 (7th Cir. 2017) ("[A] federal court applying state law should apply the law as announced by intermediate state courts unless there are reasons that convince the federal court that the state's high court would rule differently"). Because this Court sees no basis to find that the Supreme Court of Illinois would reject *Affiliated Health*, it must follow the rule of law as announced by the intermediate Illinois state court. *Id*. Kasongo also relies on a decision from the Court of Appeals of Texas, *ViewPoint Bank v. Allied Prop. & Cas. Ins. Co.*, 439 S.W.3d 626, 630 (Tex. App. 2014), which she believes reaches a result contrary to *Affiliated Health*. Dkt. 40 at 4. The parties, however, do not dispute that Illinois law applies to Kasongo's breach of contract claim. As a result, even though other state courts interpreting similar provisions of the UCC may have reached different results, this Court must follow Illinois law.

Section 3-414 of the UCC, which states that if "a draft is accepted by a bank, the drawer is discharged, regardless of when or by whom acceptance was obtained." 810 ILCS 5/3-414(c). Because the banks accepted the checks, "the [i]nsurers' obligation to pay for the medical services performed by Affiliated was discharged pursuant to section 3-414-(c)." 58 N.E.3d at 777.

Relying on *Affiliated Health*, American General argues that, because a bank accepted the forged checks, American General was discharged under Section 3-414 from any obligation to pay Kasongo. Dkt. 22 at 2-3. Although *Affiliated Health* was not a breach of contract case, the court's reasoning—that the insurers' underlying obligation to pay was discharged under Section 3-414 when the banks accepted the checks—also applies to Kasongo's claims. Even though Kasongo's father forged her signature on the checks, American General's obligation to pay Kasongo on those checks was discharged under Section 3-414 when the bank accepted them.

But even if American General's obligation to pay Kasongo was not discharged under Section 3-414, Kasongo's claim for breach of contract would still fail under Section 3-310 as the obligation to pay Kasongo would be suspended. Section 3-310(b)(4) provides that "[i]f the person entitled to enforce the instrument taken for an obligation is a person other than the obligee, *the obligee may not enforce the obligation to the extent the obligation is suspended.*" 810 ILCS 5/3-310(b)(4) (emphasis added).

Illinois law, to be sure, is not entirely clear on when a forged check is considered "paid." Under Section 3-602(a), a check is "paid" if the payment goes "to a person entitled to enforce" the check. 810 ILCS 5/3-602(a). As explained above,

because *Parkway Bank* involved a co-payee, the court there looked to Section 3-110(d), which states that a co-payee acting alone is not entitled to enforce a check. 990 N.E.2d at 1206. Because one of the co-payees in that case, acting alone, was not "entitled to enforce the check," the check could not be considered paid under Section 3-602(a) ("an instrument is paid to the extent payment is made . . . to a person *entitled to enforce the instrument*"). 810 ILCS 5/3-602(a).

In this case, however, there are no co-payees, and thus *Parkway Bank*'s analysis of when a check is considered "paid" under Section 3-602(a), in conjunction with Section 3-110(d), does not directly apply. In contrast, *Affiliated Health* simply applied Section 3-414 to conclude that the forged checks were "paid." 58 N.E.3d at 778.

The UCC also contains a provision (that neither *Parkway* nor *Affiliated Health* discusses) addressing who may be considered a person entitled to enforce a check. Specifically, Section 3-301 defines "person entitled to enforce" as "the holder of the instrument," even if the person "*is in wrongful possession of the instrument.*" 810 ILCS 5/3-301 (emphasis added). Under this provision, even a fraudster (as Kasongo's father is alleged to be) is considered a "person entitled to enforce" the check, meaning the checks would be considered "paid" for purposes of Section 3-310, and there would be no breach of the underlying contractual obligation.

It is not necessary at this point, however, to answer the question of when Illinois law considers a forged check "paid." At the very least, American General's contractual obligation to pay Kasongo was suspended (as in *Parkway Bank*) when

12

Kasongo's father improperly cashed the checks, and at most, the obligation was completely discharged (as in *Affiliated Health*), when the bank accepted the forged checks. Either way, there was no *breach* of the underlying contractual obligation.

Finally, Kasongo argues that, under 810 ILCS 5/3-117, the parties agreed "to terms that exceeded the rights each would have under the UCC against each other." Dkt. 40 at 2. Kasongo, does not, however, describe which specific terms the parties agreed to that would have modified their obligations under the UCC. Kasongo baldly asserts that "[p]ayment under the AIG policy terms requires that Kasongo actually receive the funds owed to her under the annuity," but, again, this claim is neither supported by the text of the Annuity itself nor the provisions of the Illinois UCC.

In the end, the Court recognizes that the UCC framework described above may appear to be an unduly formalistic way of analyzing a deeply unfortunate set of facts. Illinois law is clear, however, that when a third-party forger steals an insurance check, a plaintiff is generally not allowed to recover from the insurance company (assuming that the insurance company mailed the check to the correct payee at the correct address). So too here: Kasongo may not recover the stolen Annuity payments from American General. Because she has failed to allege the existence of a breach, Kasongo's breach of contract claim must be dismissed.

## IV. CONCLUSION

Based on the Court's analysis of governing Illinois law, Defendant's motion to dismiss must be granted. This dismissal, however, is without prejudice: if Kasongo believes she can cure the pleading deficiencies identified in this opinion, Kasongo has

until September 9, 2020 to submit an amended complaint. If Kasongo does not file an amended complaint by September 9, 2020, the dismissal will convert to a dismissal with prejudice.

SO ORDERED.

Date: August 13, 2020

_____

JOHN F. KNESS
United States District Judge